Chad M. Hagan (*pro hac vice*)
chad.hagan@hnbllc.com
Timothy M. Frank (California Bar No. 263245)
timothy.frank@hnbllc.com
**HAGAN NOLL & BOYLE, LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone:  (713) 343-0478
Facsimile:  (713) 758-0146

Mark J. Hattam (California Bar No. 173667)
mhattam@allenmatkins.com
Michael J. Holmes (California Bar No. 199311)
mholmes@allenmatkins.com
**ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP**
501 West Broadway, 15th Floor
San Diego, California 92101
Telephone: (619) 233-1155
Facsimile: (619) 233-1158

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., and NAGRASTAR LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALAN PHU, ALCY & AJ INVESTMENT LLC, ALCY INVESTMENT LLC, AJ MANAGEMENT LLC, and CYNDI PHU, individually and as trustee of THE CYNDI QUALIFIED PERSONAL RESIDENCE TRUST and THE CYNDI QUALIFIED VACATION HOME TRUST,<br><br>Defendants. | Case No. 13-CV-111-L (WVG)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT'S ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Hearing Date & Time:  TBD<br><br>Hon. Judge M. James Lorenz<br>Courtroom 14 |

In its March 27, 2013 order, the Court dismissed, sua sponte, the complaint of Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC (collectively, "DISH Network") for lack of subject matter jurisdiction.  (Dkt. 16.)  The Court relied primarily on the restraints placed on ancillary subject matter

jurisdiction by the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996). DISH Network respectfully requests that the Court reconsider its ruling in light of *Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449 (9th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997), a more recent case that has distinguished *Peacock* and upheld the exercise of ancillary subject matter jurisdiction over post-judgment fraudulent transfer claims as alleged here by DISH Network.

## I.   LEGAL STANDARD

The Court's order of dismissal authorized DISH Network to file an amended complaint and therefore does not constitute a final order. *See WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). Federal Rule of Civil Procedure 54(b) governs interlocutory orders and allows for reconsideration if: (i) there is newly discovered evidence that was not previously available to the moving party; (ii) the court committed clear error or the decision is manifestly unjust; or (iii) there was an intervening change in controlling law. *Level 3 Commc'ns LLC v. Lidco Imperial Valley, Inc.,* No. 3:11-cv-1258-GPC-MDD, 2013 U.S. Dist. LEXIS 12691, at *6-7 (S.D. Cal. Jan. 30, 2013) (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 880 (9th Cir. 2009); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989)). DISH Network respectfully argues that the Court committed a clear error when dismissing its claims for lack of subject matter jurisdiction.[1]

## II.   ARGUMENT & AUTHORITIES

In *Peacock*, it was recognized that ancillary subject matter jurisdiction has been exercised by the Supreme Court: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate

---

[1] To the extent the order of dismissal is deemed final, clear error is also grounds for reconsideration under Rule 59(e), which applies to final orders. *See United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 780 (9th Cir. 2009); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1989).

its authority, and effectuate its degrees." 516 U.S. at 354 (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994)). The first prong is generally codified at 28 U.S.C. § 1367(a). *See id* at 354 n.5. The "enforcement" prong is a separate basis for ancillary subject matter jurisdiction. *See United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1012 n.5 (9th Cir. 1999); *Myers v. Richland County*, 429 F.3d 740, 746-47 n.5 (8th Cir. 2005); *see also Kokkonen*, 511 U.S. at 379-80 (1994) (stating the prongs serve "two separate, though sometimes related, purposes," and proceeding to analyze each prong individually).

In describing the first basis for ancillary subject matter jurisdiction, which requires a certain level of "factually interdependent" claims, *Peacock* states:

> Ancillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," … but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. … In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. … Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." … But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished. As in *Kroger*, "neither the convenience of litigants nor considerations of judicial economy" can justify the extension of ancillary jurisdiction over Thomas' claims in this subsequent proceeding.

516 U.S. at 355 (citations omitted); *see* Dkt. 16, Order at 2:11-22, 4:5-8 (relying on and incorporating language from *Peacock*). *Peacock* went on to conclude "there is insufficient factual dependence between the claims raised in Thomas' first and second suits to justify the extension of ancillary jurisdiction", and "under these circumstances, no greater efficiencies would be created by the exercise of federal jurisdiction over them." 516 U.S. at 356; *see* Dkt. 16, Order at 4:9-15 (dismissing DISH Network's fraudulent transfer claims upon making the same determinations).

The Court's finding that DISH Network's fraudulent transfer claims and the underlying DMCA and FCA claims lack the factual interdependence required under the first prong of ancillary subject matter jurisdiction, as defined in *Peacock*, is not disputed. However, DISH Network respectfully requests that the Court reconsider its order of dismissal under the second prong of *Peacock*, the enforcement aspect of ancillary subject matter jurisdiction.

*Peacock* recognizes that ancillary subject matter jurisdiction is properly used "in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." 516 U.S. at 356. The exercise of such jurisdiction has been approved "over a broad range of supplementary proceedings involving third parties … including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.* The Court cautioned that its "recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357.

The Ninth Circuit has analyzed *Peacock* and determined that the enforcement aspect of ancillary subject matter jurisdiction is applicable to post-judgment claims for fraudulent transfer. *Thomas, Head*, 95 F.3d at 1454-55. The issue in *Thomas, Head* was whether the district court properly exercised subject matter jurisdiction over a supplementary proceeding brought against the judgment debtor, Buster, and the Johnson parties who received allegedly fraudulent transfers of properties from him. *Id.* at 1452. In the underlying case, judgment had been entered against Buster for breach of fiduciary duties under ERISA. *Id.* at 1451. There was not complete diversity between the parties in the post-judgment fraudulent transfer proceeding, and no federal question presented, leaving ancillary jurisdiction as the only basis for subject matter jurisdiction. *Id.* at 1454.

The Ninth Circuit started its analysis by stating "[t]here can be little question that federal courts generally possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor." *Id.* at 1453 (citing *Swift &*

*Co. Packers v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684, 694-95 (1950); *Dewey v. West Fairmont Gas Coal Co.*, 123 U.S. 329, 333 (1887)). "This power derives from the long-recognized principle that a federal court may assert authority over non-federal claims 'when necessary to give effect to the court's judgment'." *Id.* (quoting *Finley v. United States*, 490 U.S. 545, 551 (1989)); *see also Wayman v. Southard*, 23 U.S. (10 Wheat) 1, 23 (1825) ("The jurisdiction of a Court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied").

Turning to the fraudulent transfer claims, the Ninth Circuit relied on *Dewey* and determined that ancillary subject matter jurisdiction existed over such claims. *See Thomas, Head*, 95 F.3d at 1454-55. In *Dewey*, "the Supreme Court held that federal district courts possess ancillary jurisdiction over a fraudulent conveyance action against the transferee of the judgment debtor's assets." *Id.* at 1454. The fact that "the transferee was not originally a party to the proceeding", and the transfers took place before and after the underlying judgment was entered, does not defeat jurisdiction. *Id.* at 1454-55 n.9. The Ninth Circuit concluded that the district court properly exercised ancillary jurisdiction over the fraudulent transfer claims in order to protect its judgment:

> [T]he supplementary proceeding to set aside the fraudulent transfers is essential to prevent Buster's efforts to avoid the district court's original judgment. *See Peacock*, 116 S. Ct. at 869 ("Ancillary enforcement jurisdiction is, at its core, a creature of necessity.") We therefore find *Dewey* applicable, and hold that the district court properly exercised ancillary jurisdiction over both Buster and the Johnson parties in Thomas, Head's supplementary proceeding to set aside the alleged fraudulent conveyances.

*Id.* at 1455.

Other federal courts of appeal have followed *Thomas, Head* and upheld the exercise of ancillary subject matter jurisdiction over post-judgment proceedings where the judgment creditor is attempting to recover assets fraudulently transferred by the judgment debtor. *Epperson v. Entm't. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) (holding district court's dismissal for lack of subject matter jurisdiction

was in error, stating "[w]here the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party"); *Gambone v. Lite Rock Drywall*, 288 Fed. Appx. 9, 13 (3d Cir. 2008) (finding ancillary subject matter jurisdiction over post-judgment claims for fraudulent conveyance); *see also Turner v. Hallberg*, No. 04-276-KI, 2011 U.S. Dist. LEXIS 88960, at *5-7 (D. Or. Aug. 10, 2011) (more recent case following *Thomas, Head* and exercising ancillary jurisdiction over post-judgment fraudulent transfer claims). Importantly, the Ninth Circuit and these other appellate courts have distinguished *Peacock*. *See* 95 F.3d at 1454; 242 F.3d at 105-06; 288 Fed. Appx. at 12-13.

*Peacock* involved a post-judgment proceeding in which the district court had pierced the corporate veil of the judgment debtor and held an officer/shareholder individually liable for the full amount of the underlying judgment. 516 U.S. at 351-52. Accordingly, at the outset the Court framed the jurisdictional issue as follows: "This case presents the issue whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor *seeks to impose liability for a money judgment on a person not otherwise liable for the judgment*." *Id.* at 351. (emphasis added.) The Court held that subject matter jurisdiction was lacking over the post-judgment veil-piercing claim, stating that "[w]e have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357-358 ("Thomas' attempt to make Peacock answerable for the … judgment is not ancillary to that judgment").

The Ninth Circuit in *Thomas, Head*, however, recognized that the fraudulent transfer claims in that case were different than the veil-piercing claims in *Peacock*:[2]

---

[2] Though the *Peacock* opinion references a fraudulent conveyance claim, the district court entered judgment on the veil-piercing claim and the Court expressly declined

> Under Alaska law, … the Johnson parties are indispensable parties to the fraudulent conveyance claims, and Thomas, Head seeks only to disgorge from them, as alleged fraudulent transferees, the property Buster wrongfully transferred to them. Because Thomas, Head is not attempting to establish the Johnson parties' liability for the original judgment, we find *Peacock* inapposite.

95 F.3d at 1454.[3]  The Second and Third Circuits similarly distinguished *Peacock*. *See Epperson*, 242 F.3d at 105 ("*Peacock* does not hold that fraudulent conveyance claims brought in a subsequent action require an independent jurisdictional basis"); *Gambone*, 288 Fed. Appx. at 12 ("Nothing in *Peacock* … precludes ancillary jurisdiction over suits involving assets already subject to the judgment; it only bars the exercise of ancillary jurisdiction over attempts to impose personal liability for an existing judgment on a new party.").  The dividing line drawn by these courts – post-judgment actions to collect a judgment, versus actions seeking to hold a new party liable on an existing judgment – has also been recognized by the First Circuit:

> Where a postjudgment proceeding presents an attempt simply to collect a judgment duly rendered by a federal court, even if chasing after the assets of the judgment debtor now in the hands of a third party, the residual jurisdiction stemming from the court's authority to render that judgment is sufficient to provide for federal jurisdiction over the postjudgment claim. *See, e.g.*, *Thomas, Head*, 95 F.3d at 1454 … However, where that postjudgment proceeding presents a new substantive theory to establish liability directly on the part of a new party, some independent ground is necessary to assume federal jurisdiction over the claim, since such a claim is no longer a mere continuation of the original action. *See, e.g.*, *id.* at 1454 n.7, *citing Peacock*, 516 U.S. at 356 n.6 … These distinctions might strike a metaphysical note for some, but they have been long honored by the law and have been recognized by the Supreme Court.

*U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir. 2000).

In sum, *Peacock* is not dispositive because DISH Network is not attempting to hold Cyndi Phu, or any of the limited liability companies named as defendants, responsible for the $64.9 million judgment that was previously entered by the Court against Alan Phu. Rather, the purpose of DISH Network's claims is to enforce and collect on the Court's judgment by taking back assets that Alan Phu fraudulently

---

to construe the case as one involving a fraudulent transfer. 516 U.S. at 357 n.6; *see Thomas, Head*, 95 F.3d at 1454 n.7; *Epperson*, 242 F.3d at 105-06 n.4.

[3] California law also provides that "[t]ransferees are necessary parties 'in an action to declare a transfer void as fraudulent'." *Diamond Heights Vill. Ass'n, Inc. v. Fin. Freedom Senior Funding Corp.*, 196 Cal. App. 4th 290, 304 (2011) (quoting *Heffernan v. Bennett & Armour*, 110 Cal. App. 2d 564, 586-87 (1952)).

transferred in an effort to avoid satisfying this judgment. (*See* Dkt. 1, Pls.' Compl. at ¶¶ 11, 96, 103, 110, 117, 124, 131, 138, 145; Prayer for Relief at p.19-21.) Under the Ninth Circuit's decision in *Thomas, Head*, and the Supreme Court cases cited therein, there is ancillary subject matter jurisdiction over DISH Network's fraudulent transfer claims. 95 F.3d at 1453-55.

Finally, it is immaterial that the fraudulent transfer claims in *Thomas, Head* were part of a supplemental complaint filed in the original action, as opposed to the separate case initiated by DISH Network. This is a difference without meaning for purposes of deciding whether the exercise of ancillary enforcement jurisdiction is proper. *See Epperson*, 242 F.3d at 106 n.6 (refusing to distinguish *Thomas, Head* on the basis that it involved a supplementary proceeding); *see also Myers*, 429 F.3d at 747 (rejecting argument that ancillary jurisdiction was lacking simply because the plaintiff filed a new case rather than a motion in the original action); *Donell v. Kowell*, 533 F.3d 762, 768-69 (9th Cir. 2008) (finding ancillary jurisdiction existed over fraudulent transfer claims brought against person that received pay out from the Ponzi scheme at issue in the underlying SEC enforcement action, even though, of importance here, the claims were brought in a separate case).[4]

### III.   CONCLUSION

Ancillary subject matter jurisdiction is properly exercised over the fraudulent transfer claims filed by DISH Network. The complaint should be reinstated so that DISH Network may proceed before this Court to take back the property that Alan Phu wrongfully disposed of in an effort to shield it from collection and thereby frustrate the Court's judgment. The Court's interest in protecting its judgment, and DISH Network's interest in having that judgment enforced in federal court, justify the exercise of ancillary jurisdiction. In addition, having the claims decided by this

---

[4] *Peacock* references a "same proceeding" requirement, but only in the context of ancillary jurisdiction based on factually related claims and not when discussing the enforcement prong. *See* 516 U.S. at 355-59. The fact that the Court considered the enforcement prong, even though the veil-piercing claims were brought in a separate post-judgment case, further demonstrates that the filing of a new case does not bar the exercise of ancillary enforcement jurisdiction.

1 | Court is beneficial because of its familiarity with the underlying case that was filed over three years ago, and because similar post-judgment collection proceedings and discovery efforts continue to take place before this Court and may present related issues and even lead to additional fraudulent transfer claims.[5]

DATED: April 4, 2013.

Respectfully submitted,

By: s/ Timothy M. Frank
Chad M. Hagan (*pro hac vice*)
chad.hagan@hnbllc.com
Timothy M. Frank (California Bar No. 263245)
timothy.frank@hnbllc.com
**HAGAN NOLL & BOYLE, LLC**
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs

---

[5] The Court's order has a footnote indicating there may also be an issue with venue. The defendants, however, waived any challenge to venue by failing to assert that affirmative defense in their answer. *See Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("A defendant must object to venue by motion or in his answer to the complaint or else his objection is waived."); *Haese v. Stewart Title Guar. Co.*, No. CV 10-1687-PHX-SRB, 2012 U.S. Dist. LEXIS 183629, at *9-10 (D. Ariz. Feb. 1, 2012) (general denial of venue allegations does not preserve venue defense). In light of the waiver, DISH Network's claims may not be dismissed sua sponte for improper venue. *See Costlow*, 790 F.2d at 1487-88; *see also Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687-88 (9th Cir. 1993) (district court can dismiss sua sponte based on statute of limitations provided that defense has not been waived, finding *Costlow's* discussion of the venue defense analogous). The waiver aside, under 28 U.S.C. § 1391(b), a substantial part of the events have occurred in this District because of the relationship between the fraudulent transfer claims and the underlying proceedings before and judgment ultimately entered by this Court.